Mary Jo NORTON, as officer for the
Starlight Drive-In, Inc., Plaintiff-Appellant,

v.

TOWN OF SEVASTOPOL and Town Board Members, c/o
Arthur Mueller, Town Chairman,
Defendants-Respondents.

Court of Appeals

*No. 81–1528. Submitted on briefs March 8, 1982.—
Decided July 20, 1982.*
(Also reported in 323 N.W.2d 148.)

For the appellant the cause was submitted on the briefs of *Challoner Morse McBride* of Sturgeon Bay.

For the respondent the cause was submitted on the brief of *Pinkert, Smith, Koehn & Weir* and *Jeffery M. Weir* of Sturgeon Bay.

Before Foley, P.J., Dean and Cane, JJ.

CANE, J.   Mary Jo Norton, an officer of the Starlight Drive-In, Inc., appeals from an order dismissing the petition for review of Starlight's application for a fermented malt beverage license under sec. 66.054 (8), Stats. She contends that drive-in theaters are "recreation premises" under sec. 66.054 (8) (a), and therefore the town board could have granted a Class "B" license for a bluegrass festival at the drive-in.  She also contends that, in issuing such a license to a supper club and not to her establishment, the town board violated her right to equal protection under the United States Constitution.  Because we conclude that drive-in theaters are not within the meaning of "recreation premises" under sec. 66.054 (8) (a), we affirm the order.

Starlight Drive-In, Inc., is a small, closely held corporation, which owns and operates an outdoor theater north of Sturgeon Bay, Wisconsin.  The Starlight Drive-In has a restaurant, which is operated in conjunction with its theater business.  A bluegrass festival at the drive-in was planned for June 11, 1981.  Norton originally applied for a one-day beer license under sec. 66.054 (8) (c), but the drive-in was not eligible for this type of license.  Norton then applied for a six-month license under sec. 66.054 (8) (a), at the suggestion of the Department of Revenue. The town board denied the application at a meeting held May 12, 1981, based on its interpretation that the statute did not allow it to issue such a license to a drive-in theater.  On May 14, 1981, Norton filed for review of the application in the Door County Circuit Court.

After a hearing on June 18, 1981, the court dismissed the action.  In its findings of fact and conclusions of law, filed on June 24, 1981, the trial court concluded:

a.   The plaintiff's drive-in theater is not a "recreation premises" and, therefore, the plaintiff does not meet one

of the exceptions for doing "any other business" under said statute.

b. That upon the plaintiff's own admission, the plaintiff is not qualified for a 1 day fermented malt beverage license under Wisconsin Statutes, Section 66.054(8)(c), and in making said second application under 66.054(8) for a 6 month license, is simply attempting to avoid the statutes.[1]

Notice of appeal was filed on August 7, 1981. The date for the proposed bluegrass festival has passed, making the case moot. We review it, however, because the issue on the interpretation of the statute is likely to recur and to evade review in the future, warranting a definitive decision to guide trial courts in similar circumstances.[2]

Whether to grant or deny a license is vested in the discretion of the town.[3] We review whether the town's decision was arbitrary or capricious. The town interpreted the statute not to allow a license to a drive-in theater. If this reading of the statute was erroneous, the decision must be vacated to allow the town to exercise its discretion. Although interpretation of a statute is a question of law and we are not required to follow the reasoning of the trial court, we agree with the court's interpretation of the statute in this case.

Section 66.054(8)(a), provides in part:

No Class "B" retailer's license shall be granted for any premises where any other business is conducted, in connection with a licensed premises and no other business may be conducted on the licensed premises after the granting of the Class "B" license except that restriction

---

[1] Record 11, at 4.

[2] *Gibson v. Transportation Comm'n,* 106 Wis. 2d 22, 26, 315 N.W.2d 346, 348 (1982); *State ex rel. McDonald v. Douglas County Circuit Court,* 100 Wis. 2d 569, 572–73, 302 N.W.2d 462, 463 (1981); *Oshkosh Student Ass'n v. Board of Regents,* 90 Wis. 2d 79, 82, 279 N.W.2d 740, 741 (Ct. App. 1979).

[3] Section 176.05, Stats.

shall not apply to a hotel, or to a restaurant not a part of or located in any mercantile establishment, or to a combination grocery store and tavern, or to a combination sporting goods store and tavern in towns, villages and cities of the 4th class or to novelty store and tavern, or to a bowling alley or recreation premises or to a bona fide club, society or lodge that shall have been in existence for not less than 6 months prior to the date of filing application for the Class "B" license.

The town contends that even if drive-ins qualify as recreation premises under the statute, Norton cannot obtain a Class "B" license because she has both a restaurant and a drive-in. Norton asserts that bowling alleys with Class "B" licenses and restaurants are common throughout the state indicating that stacking of exceptions is permitted. We decline to take judicial notice of this.[4] The town cites 66 Op. Atty. Gen. 176, 178 (1977), for the proposition that the holder of a Class "B" license who also conducted a restaurant on the premises could not allow the premises to be rented for auctions because an auction is a third business. The town argues that Norton cannot obtain a Class "B" license under the restaurant exception if she also operates another type of business on the premises. While the court is not bound by an opinion of the attorney general, it is accorded great weight in matters of statutory construction.[5] The attorney general's opinion is not precisely on point because the "third business" sought to be conducted did not conceivably fall under any exception in the statute. A drive-in theater may, however, arguably be considered to be premises upon which recreation takes place. We leave the question of whether exceptions may be stacked unanswered, since no over-

[4] Although such a three-business facility was the setting in *State v. Ludwig*, 31 Wis. 2d 690, 143 N.W.2d 548 (1966), the propriety of its license was not the issue before the court.

[5] *Id.* at 698, 143 N.W.2d at 552.

whelming authority for either view is presented and because it is not essential to our decision on statutory interpretation.

Norton contends that the Starlight Drive-In premises are "recreation premises." A drive-in theater has been considered "recreational" under a zoning statute.[6] Webster defines recreation as: "a means of refreshment or diversion."[7]

The town offered evidence on the administrative interpretation of the statute. A representative of the Department of Revenue testified that its practice has been to exclude drive-in theaters from the definition of "recreation premises" under the statute. While the court is not bound by an administrative interpretation of a statute, the interpretation is given great weight where it is of long standing and acquiesced in by the legislature.[8] We are not entirely persuaded that the testimony of the representative of the Department of Revenue represents the long-standing practice of that agency with regard to applications for Class "B" licenses by drive-in theaters. Although the testimony is evidence in the record, we decline to rest our decision on it alone.

The main reason for our conclusion that sec. 66.054 (8) (a) should not be read to include drive-in theaters in the definition of "recreation premises" is our belief that this best reflects the legislative intent. We may ascertain the legislative intent by examining the language

---

[6] *See, e.g., Kramer v. Government of Virgin Islands,* 479 F.2d 350, 352 (3rd Cir. 1973) (affirming the district court's finding that an outdoor drive-in theater is a "recreational use" within the meaning of a zoning statute that permitted a special exception for such uses in a residential zone).

[7] Webster's New Collegiate Dictionary 966 (rev. 4th ed. 1977).

[8] *Wisconsin Department of Revenue v. Exxon Corp.,* 90 Wis. 2d 700, 733, 281 N.W.2d 94, 112 (1979).

of the statute in relation to its scope, its history, the general statutory context, the subject matter, and the object the legislature intended to accomplish or the ill it intended to remedy.[9] The statute states: "No Class 'B' retailers' license shall be granted for any premises where any other business is conducted, in connection with the licensed premises and no other business may be conducted on the licensed premises after the granting of the Class 'B' license."[10] This prohibition is followed by a very specific list of exceptions. The statute permits a license to a restaurant, but only if it is not located in a mercantile establishment; to a combination sporting goods store and tavern, but only in a municipality of the fourth class. A separate section with detailed restrictions governs the allowance of auctions and markets on licensed premises and evidences the legislative policy of keeping the other business separate from the activity involving malt beverages.[11] We conclude that the wording of the statute evidences a legislative intent to generally prohibit the conduct of all other business on the premises of licensed Class "B" retailers of fermented malt beverages, subject only to a very few limited and specific exceptions.

The statute regulating the issuance of Class "B" fermented malt beverage licenses has been subject to frequent modification by the legislature. In fact, the exception for premises upon which markets and auctions are conducted was legislatively enacted following the attor-

[9] *State v. Wachsmuth*, 73 Wis. 2d 318, 324–25, 243 N.W.2d 410, 414 (1976); *Ortman v. Jensen & Johnson, Inc.*, 66 Wis. 2d 508, 520, 225 N.W.2d 635, 642 (1975).

[10] Section 66.054(8), Stats.

[11] *See* § 66.054(8)(b), Stats; *Ludwig*, 31 Wis. 2d at 698, 143 N.W.2d at 552, in which the court emphasized that the fact that the building containing a restaurant and barroom also contained a bowling alley did not place the entire premises under the bowling alley exemption in the statute prohibiting presence of minors in places of sale of malt beverages.

ney general's opinion that interpreted the statute to exclude them.[12]

Norton notes in her reply brief that the legislature could easily have added the words "drive-in theaters" after the provision that a restaurant in a mercantile establishment was not an exemption, but did not. It is equally true that the legislature could have added the words "drive-in theaters" after the stated exception for a bowling alley. Yet, the legislature did not. As in the case of market and auction premises, recourse is in the legislature. We find no legislative intent implied to include drive-in theaters in the definition of "recreation premises" in the statute as it is presently worded.

The fact that the drive-in would only sell fermented malt beverages while the premises was being used for a bluegrass festival does not change this conclusion. An outdoor concert on premises including a restaurant is sufficiently dissimilar from any of the other uses permitted on premises displaying a Class "B" license that we conclude the legislature did not have this in mind. This conclusion is buttressed by the legislature's very express restrictions on the sale of fermented malt beverages during a market or auction.[13]

Our conclusion that the statute does not contain an exception for drive-in theaters or include them within the definition of "recreation premises" makes the decision of

---

[12] Section 66.054(8)(b), Stats., created by § 2, ch. 165, 1979 Wis. Laws, effective April 8, 1980.

[13] Section 66.054(8)(b)4 prohibits the consumption, sale, gift, or provision of fermented malt beverages except in a room in which no activity related to the auction or market is being conducted. The purpose of these restrictions is similar to the purpose of § 66.054(19), Stats., to keep minors away from areas where malt beverages are being consumed. Query how the policy of separation would be maintained at an outdoor music festival.

the town board one of law, not within the discretion of the town board. Norton does not directly challenge the constitutionality of the statute in her brief, but argues only that the board violated equal protection by denying her application while granting a license to Mr. G's supper club. While the patrons of supper clubs and blue-grass festivals have in common the activities of eating, watching the band, and dancing, we do not believe the musical activity constitutes "any other business" in the case of the supper club. It is entertainment auxiliary to the food. In any event, the validity of the license of Mr. G's is not before the court. Our conclusion that the statute does not allow an exception for drive-in theaters makes it unnecessary to address the equal protection arguments raised by Norton.

In affirming the order dismissing the petition for review, we must expressly disclaim the trial court's admonition that Norton was simply attempting to avoid the statutes when she applied for a six-month license. On the contrary, we conclude that Norton should be commended for her candor with the court in admitting that she wished to use this license only for the one-day festival. We see no impropriety in her attempt to argue that the drive-in was within the class eligible for a six- to twelve-month license after it was determined that it could not qualify for a one-day license under sec. 66.054(8)(c). Nonetheless, we conclude that the second application was properly denied.

*By the Court.*—Order affirmed.