STATE of Wisconsin, EX REL., Patrick SMITH,
d/b/a Rawson Development Group Ltd.,
Petitioner-Appellant-Petitioner,

v.

CITY OF OAK CREEK, a Municipal corporation,
The Common Council of the City of Oak
Creek, and LaVerne C. Gutknecht, City of
Oak Creek Clerk, Respondents.

Supreme Court

*No. 85–1470. Argued May 28, 1987.—Decided June 26, 1987.*

(Also reported in 407 N.W.2d 901.)

790

For the petitioner-appellant-petitioner there were briefs by *Thomas P. Lyons, Michael J. Cohen* and *Cunningham, Lyons, Steele & Cramer, S.C.,* Milwaukee and oral argument by *Thomas P. Lyons.*

For the respondents there was a brief and oral argument by *Lawrence J. Haskin,* city attorney for Oak Creek.

HEFFERNAN, CHIEF JUSTICE. This is a review of a published decision of the court of appeals[1] which affirmed orders of the circuit court for Milwaukee county, Rudolph T. Randa, circuit judge. The circuit court had dismissed Petitioner Smith's petition for certiorari review of a decision of the Common Council of Oak Creek (Council). We affirm the court of appeals decision.

---

[1] 131 Wis. 2d 451, 389 N.W.2d 366 (Ct. App. 1986).

The Council voted unanimously to deny Smith's request for renewal of an alcoholic beverage license on the ground that he was a habitual law offender. Smith requested a hearing. After hearing, the Council voted not to renew Smith's license. Smith then petitioned for circuit court review of the Council's decision. He also requested a mandatory injunction ordering the Council to renew his license, as well as a temporary injunction pending the circuit court's decision. The circuit court dismissed the writ of certiorari and the motion for a temporary injunction, and denied the motion for a mandatory injunction. The court of appeals affirmed the order of the circuit court. Because the court of appeals correctly concluded that Smith is a habitual law offender and, as such, may not be issued an alcoholic beverage license under sec. 125.04(5), Stats.,[2] we affirm the decision of the court of appeals.

[2] Sec. 125.04(5), Stats., provides as follows:

"**(5) Qualifications for Licenses and Permits.** (a) *Natural persons.* Licenses and permits related to alcohol beverages, issued to natural persons under this chapter, may be issued only to persons who:

"1. Do not have an arrest or conviction record, subject to secs. 111.321, 111.322 and 111.335.

"2. Have been residents of this state continuously for at least 90 days prior to the date of application; and

"3. Have attained the legal drinking age.

"(b) *Criminal offenders.* No license or permit related to alcohol beverages may, subject to secs. 111.321, 111.322 and 111.335, be issued under this chapter to any natural person who has habitually been a law offender or has been convicted of a felony unless the person has been duly pardoned.

"(c) *Corporations.* No license or permit may be issued to any corporation unless the agent of the corporation appointed under sub. (6) and the officers and directors of the corporation meet the qualifications of pars. (a) 1 and 3 and (b).

Smith owns 50 percent of Rawson Development Group Ltd., a corporation organized under this state's laws for the purpose of owning and operating the "On the Border" tavern in the City of Oak Creek. Smith has "owned" the property since February, 1982. For the license periods of 1982–83, 1983–84, and 1984–85, the Council issued Smith a "Class B" liquor license for the tavern.

On May 13, 1985, Smith applied for renewal of his liquor license. The Council's decision not to renew was based on events revealed in Smith's testimony as a witness in the trial of former Milwaukee Police Detective Glenn Lewis.[3] Smith testified under a grant of immunity. In the course of his testimony, Smith admitted that he had used, purchased, and sold illegal drugs on several occasions. He also acknowledged in his testimony that he might lose his alcoholic beverage license because of this conduct.

On June 6, 1985, Smith was notified that his license would not be renewed because of the facts revealed by his testimony in the *Lewis* case. At Smith's request, a public hearing was held.

"(d) *Operators' and managers' licenses.* Paragraph (a) 2 does not apply to applicants for operators' licenses issued under sec. 125.17 or to applicants for managers' licenses issued under sec. 125.18. managers' licenses may be issued only to applicants who are residents of this state at the time of issuance."

[3]Lewis was charged with, and later convicted of, stealing cocaine from the property room of the Milwaukee Police Department. Smith had previously served as a confidential informant for the narcotics division of the police department and had worked with Lewis. Shortly after Lewis was charged, Smith obtained information about the theft which implicated Lewis. Smith contacted the authorities and was an important witness in the *Lewis* trial.

Portions of Smith's testimony in the *Lewis* trial were read at the hearing. Smith also spoke. He admitted that he had used and sold drugs in the past but stressed that he had never done so at the bar.[4] He stated that he had never been convicted of any drug-related offenses, and that, after the *Lewis* trial, he had voluntarily sought rehabilitation treatment for his drug problem. After the hearing, the Council voted not to renew Smith's license because it found he was a habitual law offender.

Smith sought review in the circuit court. He asserted that the Council's decision was arbitrary, capricious, and discriminatory. Smith's writ of certiorari was dismissed by the circuit court. Its order held that the decision of the Common Council to deny Smith a liquor license because he was a habitual law offender "was not arbitrary, capricious and unreasonable." In the course of its oral decision, the court also stated that, even if Smith were not a habitual law offender, his admissions were sufficient grounds for the Council to decide not to grant the license for reasons of "moral turpitude." The court denied the request for a permanent injunction and dismissed the request for a temporary injunction.

The court of appeals affirmed the circuit court's order. It held that a person could be a "habitual law offender" without having been convicted of a crime. Because Smith admitted under oath to illegal acts, the

---

[4]The record reveals a discrepancy as to whether Smith ever purchased, sold, or used illegal drugs in the bar itself. In the course of his testimony in *Lewis,* he stated that he had purchased or accepted drugs from "customers." At the Council hearing, however, Smith maintained that, while he had accepted drugs from customers *of* the bar, he had never accepted or used drugs *in* the bar (*i.e.,* in the tavern itself).

court of appeals said the Council could reasonably conclude that Smith's license should not be renewed.

A determination of whether the phrase, "habitually been a law offender," includes individuals who have not actually been convicted of crimes poses a question of statutory interpretation, a question of law. *Tahtinen v. MSI Ins. Co.,* 122 Wis. 2d 158, 166, 361 N.W.2d 673 (1985). This court decides questions of law independently, without deference to the conclusion of the court of appeals or of the circuit court. *Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984). Nor does this court owe deference to the Oak Creek Common Council's construction of the phrase, "habitually been a law offender."

The primary source for construction of a statute is its language. *Northwest General Hospital v. Yee,* 115 Wis. 2d 59, 63, 339 N.W.2d 583 (1983). Thus, this court must look first to the words of the statute at issue in order to ascertain the meaning of the phrase, "habitually been a law offender," and to determine whether the phrase is ambiguous.

Common and approved usage of words in a statute may be established by definitions contained in a recognized dictionary. *Kollasch v. Adamany,* 104 Wis. 2d 552, 563, 313 N.W.2d 47 (1981). Webster's Third New International Dictionary, in part, defines "habitual" as follows:

> "1: of the nature of a habit: according to habit: established by or repeated by force of habit: customary ... 2: doing, practicing, or acting in some manner by force of habit: customarily doing a certain thing ...."

The word, "offender," is, in part, defined by the same dictionary as:

> "1:  one that offends : one that violates a law, rule, or code of conduct : one that commits an offense ...."

A person who has "habitually been a law offender," then, is someone who has committed several offenses or has repeatedly violated the law. The phrase, "habitually been a law offender," does not require that there has been a trial or conviction for each or any offense. What is required is that the offenses were committed, that the law has been violated, and that the fact of such violations can be shown.

Further support for this construction of this phrase is evident from the face of the statute. According to the statute, there are two categories of persons who may not be issued an alcoholic beverage license: Those who have "habitually been a law offender" and those who have "been convicted of a felony." While these two categories may be interpreted to be either mutually exclusive or overlapping, they cannot be completely co-extensive, because such a construction would make one of the categories surplusage. There must be either no overlap or partial overlap between those persons in the "habitual law offender" category and those in the "convicted felon" category; if the terms are construed to means the same thing, the categories are redundant and superfluous. Statutes should be construed in a manner which will avoid a construction that makes a word or phrase superfluous. *Green Bay Broadcasting Co. v. Redevelopment Author-*

796

*ity of City of Green Bay,* 116 Wis. 2d 1, 19, 342 N.W.2d 27 (1983), reconsidered and modified, 119 Wis. 2d 251, 349 N.W.2d 478 (1984). Thus, a habitual law offender must be someone other than a convicted felon.

Petitioner Smith argues that habitual law offenders can only be persons who have been convicted of misdemeanors or ordinance violations. He also contends that a requirement of an actual conviction is implied and must be read into the statute in question, because such a requirement is present in other statutes that govern "habitual" violators.[5]

The statute in question, however, neither mentions misdemeanants and ordinance violators, nor states that a conviction is required before a person can be a habitual law offender. Had the legislature intended the phrase to assure only that those who had been convicted of misdemeanors and ordinance violations would, like felons, be prohibited from obtaining alcoholic beverage licenses, it could have provided that "no license ... may ... be issued under this chapter to any natural person who has been convicted of a felony or who has been convicted of multiple misdemeanors or ordinance violations ...." The statute does not so provide, nor does the statute contain the phrase, "convicted law offender," or any other indication that a conviction is always required before a person may be found to be a law offender. There is no cross-reference to any other statute dealing with habitual violators or containing a definition of "habitual offender." Indeed, the fact that the legislature has

[5]*See,* for *example,* sec. 351.02(1), Stats. ("Habitual traffic offender"), and sec. 939.62 ("Increased penalty for habitual criminality").

indicated in other statutes that a conviction is required, but has not done so here, validates the premise that a conviction is not always required under sec. 125.04(5), Stats.

That the phrase, "habitually been a law offender" covers all persons who are shown to have habitually violated the law, not just those persons who have been convicted on multiple occasions, is clear from the face of the statute. If the meaning of a statute is clear and unambiguous, resort to extrinsic aids, such as legislative history, for the purpose of statutory construction is inappropriate. *State v. Denter,* 121 Wis. 2d 118, 123, 357 N.W.2d 555 (1984).[6] In addition, legislative history cannot be used for the purpose of rendering an otherwise clear statute ambiguous. *State v. Derenne,* 102 Wis. 2d 38, 45–6, 306 N.W.2d 12 (1981). Accordingly, we do not address the legislative history of sec. 125.04(5), Stats.

In most cases, the applicant's conviction record will indicate whether the person has habitually been a law offender. Examination of an individual's conviction record is probably the usual way to ascertain whether that person has violated the law in the past. However, a statement under oath that the speaker has committed illegal acts, particularly when accompanied by an acknowledgment that the speaker is aware that the admission jeopardizes his alcoholic beverage license, is reliable evidence that the speaker is a law

[6]The necessity of looking to a standard dictionary to ascertain the usual meaning of a word does not render the word ambiguous as used in a statute. *Figgs v. City of Milwaukee,* 121 Wis. 2d 44, 51, 357 N.W.2d 548 (1984).

offender within the meaning of the statute. In the present case, the applicant even went so far as to testify before the Council that his earlier sworn statements were substantially correct. Thus, the Council could reasonably conclude that Smith was a habitual law offender to whom it could not issue an alcoholic beverage license under sec. 125.04(5), Stats.[7]

Smith complains that, if the phrase, "habitually been a law offender," is construed by this court to include persons who, under immunity, admit to criminal conduct, the effect will be to discourage persons from coming forward to serve as government witnesses. He also contends that it is unfair to deny him a license based on his voluntary testimony in the *Lewis* case. Yet the fact that Smith might lose his license because of his *Lewis* testimony was known to him; he acknowledged in the course of his testimony that his decision to speak might cost him his license. In

---

[7]Sec. 125.04(5) provides that denial of an alcoholic beverage license to habitual law offenders and convicted felons is "subject to secs. 111.321, 111.322, and 111.335." These statutory provisions are part of Wisconsin's Fair Employment Act (FEA). Smith has called this court's attention to the statute's reference to the FEA, although the parties have devoted little or no time to arguing about the effect of the FEA on the outcome of this case. It is sufficient to note that, while the FEA prohibits discrimination on the basis of an individual's arrest or conviction record, it is not prohibited discrimination to refuse to employ or license an individual who has been convicted of an offense "the circumstances of which substantially relate to the circumstances of the particular job or licensed activity." *See,* sec. 111.335(1) (c)1, Stats. There is undoubtedly a substantial relationship between the illegal purchase, use, and sale of controlled substances and the licensed activity in which Smith wishes to engage, the purchase and sale of a closely regulated substance.

addition, it is not even intimated that the terms of Smith's grant of immunity included immunity from nonrenewal of his liquor license. Smith received what was agreed upon—he was not prosecuted for the crimes he admitted he committed. A grant of immunity offers no more than this. Its effect is not to wipe out the offense about which the witness might otherwise have refused to answer, but to create a bar to a subsequent prosecution. *See, State v. Murphy,* 128 Wis. 201, 219, 107 N.W. 470 (1906) (opinion of Marshall, J.). Thus, the fact that Smith received a grant of immunity does not erase the illegal actions Smith admitted committing or prevent others from accepting his admissions as being true. The grant of immunity has no effect upon the operation of sec. 125.04(5), Stats., and does not afford Smith a special protected status.

Because Smith is a habitual law offender and, as such, is prohibited from being issued an alcoholic beverage license, this court need not address whether the Council could have denied Smith's license as an exercise of its discretion under sec. 125.51, Stats.[8] Both

---

[8] **Sec. 125.51(1)(a),** Stats., provides: "Every municipal governing body may grant and issue ... licenses for retail sales of intoxicating liquor ... to persons entitled to a license under this chapter as the issuing municipal governing body deems proper." (Emphasis supplied.)

The original motion before the Council was to deny the renewal "on the basis ... that the management has been habitually engaged in criminal activity by using controlled substances"; the motion passed 4–1. However, in the course of voting on the motion, council members raised additional concerns. These included the belief that the illegal use of controlled substances by the management was still going on, that Smith's testimony at the *Lewis* trial and before the Council conflicted as to whether the illegal drugs had been sold and used in the tavern itself, that the testimony of Smith and that of his wife conflicted as to whether

this statute and the case law of our state, however, provide that there is no right to an alcoholic beverage license and that the ultimate question of whether to issue such a license to a particular applicant is a matter of local concern. *See, State ex rel. Ruffalo v. Common Council of City of Kenosha,* 38 Wis. 2d 518, 526, 157 N.W.2d 568 (1968); *Marquette Savings & Loan Asso. v. Village of Twin Lakes,* 38 Wis. 2d 310, 315, 156 N.W.2d 425 (1968); *Norton v. Town of Sevastopol,* 108 Wis. 2d 595, 598, 323 N.W.2d 148 (Ct. App. 1982). In addition, it is not necessary for this court to address the effect of the legislature's decision to remove the "good moral character" requirement from the list of qualifications for alcoholic beverage license holders when it recodified this state's alcoholic beverage law.[9]

Smith also challenges the constitutionality of sec. 125.04(5), Stats., contending that it is unconstitutionally vague. The court of appeals did not address this issue, because it concluded that the record did not show that Smith had notified the attorney general of his challenge to the constitutionality of the statute. This conclusion was erroneous. In *Kurtz v. City of Waukesha,* 91 Wis. 2d 103, 117, 280 N.W.2d 757 (1979), this court held that a party challenging the constitutionality of a statute was required to notify the attorney general of the challenge so that the attorney general could have an opportunity to defend the law. However, failure to notify the attorney general of

Smith's partner would continue to be involved in management of the tavern, and that the welfare of the community would best be served by not renewing the license.

[9]*See,* sec. 176.05(9), Stats. (1979–80), which is the predecessor to sec. 125.04(5).

proceedings at the trial court level is curable by a subsequent invitation to the attorney general to participate in proceedings at the appellate level. *See, In Matter of Estate of Fessler,* 100 Wis. 2d 437, 433–44, 302 N.W.2d 414 (1981).

It is undisputed that Smith twice notified the attorney general of the fact that constitutional issues were present in his case. He wrote to the attorney general between the time of the circuit court's decision and the decision of the court of appeals, and again while his petition for review was pending in this court. Both times, the attorney general's office declined to participate. Thus, Smith is not precluded by *Kurtz* and *Fessler* from making his constitutional challenge. Notification was given.

Statutes are presumed constitutional and must be proved unconstitutional beyond a reasonable doubt. *See, State ex rel. Unnamed Petitioners v. Connors,* 136 Wis. 2d 118, 120 n. 2, 401 N.W.2d 782 (1987). "[This] court will construe the statute to preserve it if it is at all possible to do so." *State v. Popanz,* 112 Wis. 2d 166, 172, 332 N.W.2d 750 (1983). A statute is not void for vagueness "'[u]nless [it] is so vague and uncertain that it is impossible to execute it or to ascertain the legislative intent with reasonable certainty.'" *Moedern v. McGinnis,* 70 Wis. 2d 1056, 1074, 236 N.W.2d 240 (1975) (citing *Marshfield v. Cameron,* 24 Wis. 2d 56, 61, 127 N.W.2d 809 (1964)). As the Council has pointed out, the United States Supreme Court has held that vagueness challenges which do not involve first amendment freedoms must be examined in light of the facts of the case at hand. *United States v. Mazurie,* 419 U.S. 544, 550 (1975). In addition, a plaintiff whose conduct is clearly proscribed by the

statute in question cannot complain of the vagueness of a law as applied to others; the law must be impermissibly vague in all of its applications. *See, Hoffman Estates v. Flipside, Hoffman Estates,* 455 U.S. 489, 494–95 (1982).

Thus, for Smith's vagueness challenge to succeed, he must argue that sec. 125.04(5), Stats., is vague as applied to him. However, we fail to see how Smith can argue, as he does, that the language of sec. 125.04(5) did not give him notice and fair warning that his conduct was prohibited so that he could act accordingly and not have his liquor license renewal denied. Smith acknowledged, in the course of making the very statements on which the Council later based its decision not to renew his license, that he could lose his license because of his testimony. He therefore had notice, or was aware, that the illegal conduct which he admitted in the *Lewis* case could result in the loss of his liquor license, notwithstanding the fact that he could not be prosecuted for such conduct because of the grant of immunity. He obviously had warning, either at the time he committed the drug-related offenses, or at the time he agreed to testify against Lewis, that future license renewals would be jeopardized if the offenses ever came to light. Because the facts of the case at hand indicate that Smith had notice and fair warning, sec. 125.04(5) is not unconstitutionally vague as applied to him.

The court of appeals, trial court, and Council correctly interpreted the phrase, "habitually been a law offender," to include individuals who have admitted, under oath, to engaging in repeated illegal conduct. Because the Council could conclude that Smith had admitted to illegal conduct involving

controlled substances, its decision not to renew his alcoholic beverage license was properly upheld by the order of the circuit court. That order of the circuit court was correctly affirmed by the court of appeals. Section 125.04(5), Stats., is not unconstitutionally vague, as applied to Smith.

*By the Court.*—Decision affirmed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). The issue here is not whether we think this man should have a license. The issue is whether the legislature barred him from having a license. I agree with Judge Wedemeyer who dissented in the court of appeals.

The legislative history shows that the phrase "habitually been a law offender" was intended to refer to persons convicted of misdemeanors, forfeiture offenses or ordinance violations.

Furthermore by reading the habitual offender phrase to mean persons who are shown to have habitually violated the law whether or not they are convicted, the majority in effect reads into the statute a good moral character requirement. Consideration of a licensee's good moral conduct was deliberately eliminated from the statute as a requisite for a license. Whether or not the legislature was wise in omitting a good moral character requirement, the court should not modify the statute. I therefore dissent.