WILLIAM F. FLYNN, JR., Executive Director, Wisconsin Lottery
You have requested my opinion on two questions regarding the types and scope of gambling which may be legally allowed to be conducted in Wisconsin. Specifically your questions are: (1) what is the scope of gaming in which the Wisconsin Lottery is authorized or permitted to engage by article IV, section 24 of the Wisconsin Constitution and chapter 565, Stats.; and (2) if the Wisconsin Lottery cannot legally offer a particular type of gaming or gambling operation as part of the lottery, can such type of game or gambling operation be lawfully included in a state/tribal gaming compact within the Indian Gaming Regulatory Act, 25 U.S.C.A. §§ 2701-2721 (West Supp. 1989)? *Page 15 
From enactment in 1848 until 1965, article IV, section 24 of the Wisconsin Constitution (which is now subsection (1)) stated simply, in pertinent part, that "the legislature shall never authorize any lottery. . . ." In April of 1965 a constitutional amendment was approved by the voters which created article IV, section 24 (2) of the Wisconsin Constitution, which set forth authorized exceptions to the definition of consideration as an element of a lottery. Those exceptions, listed by type in the constitutional amendment, were enacted to authorize Wisconsin residents to participate in a wide variety of sweepstakes, promotions and contests, conducted on both a national and local basis.
Additional constitutional amendments provided for the Legislature to authorize two additional types of lotteries. In 1973, the constitutional amendment created article IV, section 24 (3) of the Wisconsin Constitution which provided that the Legislature may authorize bingo games licensed by the state and operated by religious, charitable, service, fraternal or veterans' organizations, or those to which contributions are deductible for federal or state income tax purposes. In 1977, the constitutional provision was again amended, creating article IV, section 24 (4) of the Wisconsin Constitution, which provided that the Legislature may authorize raffle games licensed by the state and operated by local religious, charitable, service, fraternal or veterans' organizations or those to which contributions are deductible for federal or state income tax purposes.
The most recent amendments to article IV, section 24 of the Wisconsin Constitution took place in April of 1987. These amendments created two additional subsections. Subsection (5) removed from the constitutional prohibition pari-mutuel on-track betting and prohibited the state from owning or operating any pari-mutuel betting facility or enterprise or leasing any state owned land to anyone else for those purposes. Subsection (6) authorized the Legislature to create a state operated lottery and *Page 16 
established requirements regarding advertising the lottery, statement of odds and state use of proceeds.
Therefore, the provisions of article IV, section 24 of the Wisconsin Constitution pertinent to this opinion, are as follows:
 (1) Except as provided in this section, the legislature shall never authorize any lottery or grant any divorce.
. . . .
 (6) The legislature may authorize the creation of a lottery to be operated by the state as provided by law. The expenditure of public funds or of revenues derived from lottery operations to engage in promotional advertising of the Wisconsin state lottery is prohibited. Any advertising of the state lottery shall indicate the odds of a specific lottery ticket to be selected as the winning ticket for each prize amount offered. The net proceeds of the state lottery shall be deposited in the treasury of the state, to be used for property tax relief as provided by law.
Following adoption of subsections (5) and (6), the Legislature adopted chapters 562 and 565 creating and regulating the mechanisms for conducting racing and pari-mutuel betting and the state lottery, respectively, and amended pertinent provisions of chapter 945 to avoid conflict between chapter 945 and chapters 562 and 565.
To answer your first question, I must first analyze the meaning of the term "lottery" as used in the state constitution and chapters 945 and 565 and then determine whether other forms of gambling constitute a lottery so as to come within the purview of the 1987 constitutional amendment authorizing the state operated lottery.
Neither the constitutional provision in its original form as adopted in 1848, nor any of the four amendments thereto, nor any of the statutory enactments concerning lotteries and other forms of gambling, prior to the 1953-1955 recodification of the criminal code, defined or attempted to define the term lottery. At least three separate theories and interpretations exist regarding the *Page 17 
meaning of the term lottery. As stated in the discussion and conclusion reached below, I believe only one of these theories is legally supportable.
First, one can argue that the term lottery as used in subsections (1), (2) and (6) of article IV, section 24 of the Wisconsin Constitution carries a broad construction so as to prohibit all forms of gambling. This argument holds that since lotteries have been construed and defined in more recent times as constituting an enterprise containing the three elements of prize, chance and consideration, and since all activities which constitute various forms of gambling must contain, in some form, those same three elements, therefore, ipso facto, the term lottery encompasses all forms and types of gambling.
Second, arguably the term lottery as used in subsection (1) of article IV, section 24 of the Wisconsin Constitution is broad and generic (i.e., it refers to and embraces all known forms of gambling); but that the term lottery as used in subsection (6) of article IV, section 24 of the Wisconsin Constitution is a separate, distinct and far narrower form of lottery (i.e., it only refers to the state operated lottery and no other form of gambling).
Third, the meaning of the term lottery as used in the constitution can be construed to refer to only one specific form of gambling and not all other forms of gambling such as betting, the playing of gambling machines and devices, and similar forms of gambling.
Although neither the constitutional provision in its original form nor any of the amendments thereto, nor any of the statutory enactments concerning lotteries (prior to 1953) defined the term lottery, that term has over the years been continuously, consistently and uniformly held to mean an enterprise being conducted in such a manner so as to include the three elements of prize, chance and consideration in one of several forms. Stateex rel. Cowie v. La Crosse Theaters Co., 232 Wis. 153,286 N.W. 707 (1939); State ex rel. Regez v. Blumer, 236 Wis. 129,294 N.W. 491 (1940); State v. Laven, 270 Wis. 524, *Page 18 71 N.W.2d 287 (1955); and Kayden Industries, Inc. v. Murphy, 34 Wis.2d 718,150 N.W.2d 447 (1967).
As well, various attorney general opinions have concluded that an illegal lottery existed where there existed an enterprise involving the three elements of prize, chance and consideration. These appear as early as 1916 in 5 Op. Att'y Gen. 380 (1916) and continue up to more recent opinions in 61 Op. Att'y Gen. 405 (1972), 62 Op. Att'y Gen. 122 (1973), and 70 Op. Att'y Gen. 59 (1981).
I must and do recognize that the court decisions and attorney general opinions cited immediately above can be read in such a way so as to arguably indicate that the supreme court and the attorney general were taking a broad view of the meaning of the term lottery. However, it is critical to note that in neither the cases presented to the supreme court nor in the questions presented to the attorneys general were there ever issues or questions raised as to the nature or status of all forms of gambling. Thus, neither the supreme court nor the attorney general ever addressed the specific issue of what constitutes gambling and whether or not there are separate forms of gambling or just one form, i.e., lotteries. For these reasons, your question and this opinion are unique.
What I believe to be not only important and critical for my analysis, but also dispositive of your question, is the fact that from a historical point of view and from today's perspective, the Legislature has recognized the distinctions between the several forms of gambling and has accorded them separate and distinct treatment in the criminal statutes prohibiting gambling in this state. Neither the Legislature nor the courts have ever equated lotteries with all other forms of gambling in the sense of finding and concluding that all types of gambling constitute "lotteries" as used in our constitution or statutes.
In construing language of our constitution, courts rely on the same rules that pertain to statutory construction. Ripley v. Brown,141 Wis.2d 447, 415 N.W.2d 550 (Ct.App. 1987). When the *Page 19 
intention of the Legislature is so apparent from the face of a statute that there can be no question as to its meaning, the rules of construction need not, and should not, be used. When the language of a statute is clear and unambiguous, a court should not look outside the statute itself in construing it. 2A Singer Sutherland Statutory Construction, §§ 46.01-46.04 (Sands 4th ed. 1984); Clifford v. Colby School Dist., 143 Wis.2d 581,421 N.W.2d 852 (Ct.App. 1988); State ex rel. Smith v. Oak Creek,139 Wis.2d 788, 407 N.W.2d 901 (1987); State v. Stepniewski,105 Wis.2d 261, 314 N.W.2d 98 (1982); and others.
As our supreme court has stated: "a statute or portion thereof is ambiguous when it is capable of being understood by reasonably well-informed persons in either of two or more senses." Hoppenrath v. State, 97 Wis.2d 449, 460,293 N.W.2d 910 (1980), citing State ex rel. Neelen v. Lucas, 24 Wis.2d 262,128 N.W.2d 425 (1964). As previously stated, there are three separate and distinct theories and interpretations of the term "lottery" as used in the Wisconsin Constitution, and there is significant question as to the meaning of such term; therefore, I conclude that the meaning of such term in our constitution is unclear and ambiguous.
The analysis that a court should employ in interpreting provisions of the Wisconsin Constitution is as follows:
 (1) The plain meaning of the words in the context used;
 (2) The historical analysis of the constitutional debates and of what practices were in existence in 1848, which the court may reasonably presume were also known to the framers of the 1848 constitution.
 (3) The earliest interpretation of this section by the Legislature as manifested in the first law passed following the adoption of the constitution. *Page 20 
Jacobs v. Major, 139 Wis.2d 492, 502, 407 N.W.2d 832 (1987);State v. Beno, 116 Wis.2d 122, 136, 341 N.W.2d 668 (1984). (Citations omitted; emphasis added.)
The plain meaning of the word "lottery" as defined in Webster's Ninth New Collegiate Dictionary 706 (1984) is: "a drawing of lots in which prizes are distributed to the winners among persons buying a chance" or "a drawing of lots used to decide something" (emphasis added). It can therefore be assumed that such definition was the meaning of the word "lottery" in the context that such word was used in subsections (1) and (6) of article IV, section 24 of the Wisconsin Constitution.
There does not appear to be a record of the constitutional debates on the question of the meaning of the word "lottery" as used in our constitution.[1]
Our constitution was, in part, based on New York's Constitution.[2] An analysis of New York's constitutional prohibition of lotteries in its 1821 and 1846 constitution is found in Reilly v. Gray, 77 Hun. 402, 28 N.Y.S. 811 (1894). In Reilly
the New York court held that the New York statutes, existing *Page 21 
prior to the 1821 and 1846 constitutions, distinguished between a "lottery" and a "bet" and concluded that the New York constitutional prohibition against lotteries therefore did not include betting or pari-mutuel wagering. The New York Supreme Court ruled in Reilly, 28 N.Y.S. at 815:
 It seems to me very clear that it was not the intent of the framers of the constitution either in 1846 or 1821, in the use of the word "lottery," to include in it the subject of betting as then prohibited by statute. They were distinct subjects upon the statute book and in the public mind, and, if the design had been to cover both, they would have been named.
I believe a Wisconsin court today could reasonably presume that New York constitutional and statutory provisions existing prior to 1848 were known to the framers of Wisconsin's 1848 constitution.
The Wisconsin Legislature's interpretation of article IV, section24 of the Wisconsin Constitution prohibition against lotteries and its interpretation of what constituted a lottery, as manifested by the first law passed on the subject by the Legislature following the adoption of the Wisconsin Constitution, is not only fascinating, but, I believe, crucial to the question here. Within one year after the adoption of our constitution, the Wisconsin Legislature, in 1849, enacted laws that clearly acknowledged various forms of gambling, separate and distinct from lotteries and each other. In its adoption of chapter 138, Stats. (1849), entitled "Of Offences Against Public Policy," the Legislature created no less than fourteen separate statutory sections prohibiting several different forms of gambling activities and providing criminal penalties therefore. It is very important to note and understand that the statutory scheme of this state's public policy regarding gambling prohibitions and sanctions, as first adopted in 1849, one year after the adoption of the Wisconsin Constitution, remains largely intact today, establishing a *Page 22 
continuous and consistent public policy and interpretation of article IV, section 24.
Sections 1 through 7 of chapter 138, Stats. (1849), established crimes of setting up, promoting and conducting of lotteries, of selling or buying a "lottery ticket, or share of ticket," and against advertising lotteries. Section 8 created a separate crime of dealing "cards at a game called faro" or keeping "any gambling device whatsoever." Faro was a very popular commercial gambling game during the period between the Revolutionary War and the Civil War.[3] Section 9 established the separate crime of betting "at or upon any gaming table, game or device." Section 10 created the separate criminal offense of keeping or permitting "any gaming table, bank or device prohibited . . . to be set up or used." The remaining sections of chapter 138 set forth duties and responsibilities of law enforcement, witnesses and the courts in the enforcement of these first gambling statutes.
A reading of the 1848 Constitution, article IV, section 24 and chapter 138, Stats. (1849), make it patently clear that the Legislature understood, and enacted laws that specifically stated that there were several forms and types of gambling, separate and distinct from one another, criminally prohibited, and further that a lottery constituted only one of several forms of gambling.
The Legislature has, since 1849, created new criminal statutes prohibiting various types and forms of gambling, various gambling devices and places of gambling, consistent with its 1849 policy of identifying various forms of gambling and distinguishing those varied forms of gambling from lotteries.
In 1858, the Legislature established jail terms for commercial gamblers; sections 8, 9, chapter 169, Stats. (1858). In 1883 the Legislature set penalties for suppliers of policy or numbers and *Page 23 
for policy or numbers players; section 4539a, Stats. (1889). In 1897, the crimes of conducting pool-selling or bookmaking or patronizing pool-selling or bookmaking establishments was enacted; sections 4539b, 4539c, 4539d, Stats. (1898). In 1903, "bucket shops" were prohibited; sections 4539e, 4539f, 4539g, Stats. (1906). Criminal penalties were established in 1929 for suppliers of sports betting; section 348.085, Stats. (1929) and in 1947 for gambling device salesmen; section 348.07, Stats. (1947). Several statutes have been enacted prohibiting gambling at particular places. The Legislature prohibited gambling on trains in 1875 and 1880[4]; at race tracks in 1878[5]; at local fairs in 1885[6]; at the state fair in 1913[7]; and in taverns in 1945.[8],[9]
I have provided the lengthy history above to illustrate the continuing legislative activity on gambling laws and the perpetuation of the legislative differentiation of various types, forms and places of gambling. None of the above referred to enactments pertain to any aspect of conducting or participating in a lottery.
Prior to the recodification of the Wisconsin criminal code in 1953-55, the identification of the various forms and types of gambling remained virtually unchanged. Although the Legislature had not attempted to specifically define the various forms of gambling, it had, as evidenced by those statutes, treated the *Page 24 
various forms of gambling as distinct from one another and dealt with them in separate provisions of a general chapter dealing with offenses against public policy.
The recodification of the criminal code was enacted as chapter 623, Laws of 1953, which revised and recreated Title XXXII of the statutes related to crime. These new criminal provisions first appear as effective legislation in the Wisconsin statutes of 1955, and included, among other provisions, chapter 945, relating to gambling. This was the first time the Legislature defined a "lottery" (section 945.01 (5)); a "bet" (section 945.01 (1)), specifically excluding a lottery from the definition of a bet (section 945.01 (1)(c)); "bookmaking" (section 945.01 (2)); a "gambling machine" (section 945.01 (3)); and a "gambling place" (section 945.01 (4)).
The 1955 recodification and present chapter 945 make specific distinctions between various forms, types and methods of gambling, as has been the case since 1849, and also distinguished between the definitions of lotteries, bets, gambling machines and gambling places as forms and methods of gambling separate and distinct from each other. It is clear that the elements of prize, chance and consideration are all present in varying degrees in all forms, types and methods of gambling. In fact, those three elements must be present, in order for the activity to constitute gambling.
The distinction between lotteries and other forms and types of gambling is emphasized by the language contained in the 1955 recodification and present chapter 945. Both sections 945.01 (1), Stats. (1955) and 945.01 (1), Stats. (1987-88), which specifically defines "a bet," exclude from that definition "a lottery as defined in this section." Sec. 945.01 (1)(c), Stats. If all forms of gambling constitute lotteries then such exclusion would be absolutely meaningless. Sections 945.01 (4), Stats. (1955) and 945.01 (4), Stats. (1987-88) both define a gambling place, and state in substance, that a gambling place is one in which one of the principal uses is any of the following: "making and settling bets; *Page 25 
receiving, holding, recording or forwarding bets or offers to bet;conducting lotteries; or playing gambling machines." If all forms of gambling constitute lotteries, then a gambling place would need to be defined only as one where lotteries are conducted.
In further recognition of the continuing and consistent distinguishing between different forms, types and methods of gambling in our criminal gambling statutes, and after the adoption of the constitutional amendments in 1987, creating article IV, sections 24 (5) pari-mutuel on-track betting and (6) state operated lottery, the Legislature appropriately amended chapter 945 to avoid conflict between our gambling laws and newly created enabling legislation. Chs. 562 and 565, Stats. (1987-88). The definition of a bet, section 945.01 (1), Stats. (1987-88), was amended to exclude pari-mutuel betting subject to chapter 562 in subsection (1)(d). The definition of gambling machine in section 945.01 (3), Stats. (1987-88), was amended in subsection (b)1. to exclude from the definition of gambling machines devices used in conducting the state lottery under chapter 565 and used in conducting a race under chapter 562. These amendments were necessary to distinguish and avoid conflict between the state operated lottery or the conductors of a race utilizing machines or devices which otherwise would be illegal gambling machines or devices. Section 945.01 (4), Stats. (1987-88), defining a gambling place, excludes from that definition a place where the state lottery is conducted under chapter 565 or where a race is conducted under chapter 562, again to distinguish the state operated lottery or a legal race from an illegal gambling place. Finally, section 945.01 (5), which defines an illegal lottery, was amended in subsection (am) to exclude from the definition of an illegal lottery the state lottery as conducted under chapter 565, Stats. (1987-88).
It is clear then, as illustrated by these comparisons between the 1987-88 statutes and the language of the 1955 statutes, and the exclusions added to the 1987-88 statutes, that the Legislature has consistently and uniformly understood and treated the various *Page 26 
forms of gambling defined in present section 945.01, Stats. (1987-88), as separate forms and types of gambling distinct from one another even though they do, and by definition must, all contain the three elements of prize, chance and consideration in one form or another. To conclude otherwise would be to render much of chapter 945 superfluous. That result must be avoided.Green Bay Broadcasting v. Green Bay Authority, 116 Wis.2d 1,342 N.W.2d 27 (1983).
Betting, playing gambling machines and operating gambling places are not to be considered as included within the meaning of the term lottery as used in the constitution, and chapters 945 and 565, Stats. (1987-88). Therefore, it is clear, that the meaning of the term lottery as contained in the constitution and both legislative enactments up to the present day does not include and is not meant to embrace all the forms of gambling.
One of the fundamental canons or rules of statutory/constitutional construction is that statutes or provisions on the same subject are to be construed together. State v. Burkman,96 Wis.2d 630, 292 N.W.2d 641 (1980). These constitutional and statutory provisions are to be construed together and are considered to be in pari materia because they relate to the same thing and have the same purpose and object. 2A Singer Sutherland Statutory Construction, § 51.03 (Sands 4th ed. 1984). The terms "lottery" in subsection (1) and subsection (6) of article IV, section 24 of the Wisconsin Constitution have the same meaning, purpose and object. Statutes should be interpreted to make sense. State v. Pham, 137 Wis.2d 31, 403 N.W.2d 35
(1987).
It is apparent to me that during the entire legislative debate, over several years, on the advisability of adopting a resolution providing for a constitutional amendment authorizing a state operated lottery, during the public debate prior to the ratification of such constitutional amendment by statewide referendum in April of 1987, and during the legislative deliberations and debate on the enactment of legislation enabling the lottery constitutional *Page 27 
amendment, chapter 565, there was neither legislative or public discussion or debate nor legislative or public intent to authorize the playing of roulette, blackjack, craps, slot machines, video gambling machines and other types and forms of casino gambling.
It is clear the Legislature and citizens of Wisconsin intended only to authorize a single form of gambling, a lottery, to be operated by the state, with the utilization of tickets. Indeed, the very explanation of the referendum ballot question, that I prepared and appearing with the ballot constitutional question, stated that a citizen's vote on this ballot referendum question related only to this one form of gambling. That explanation, in relevant parts, was as follows:
EXPLANATION
 A "yes" vote would permit the Legislature to create a lottery operated by the state. . . . A "no" vote would retain the present language of section 24 of article IV of the Wisconsin Constitution, continuing the prohibition on this form of gambling.
(Emphasis added.)
I therefore believe it to be clear, and conclude, that both the framers of the constitution and the Legislature in its various enactments, treat lotteries as a form of gambling separate and distinct from the other methods of gambling such as betting, playing gambling machines and the like, and the latter can therefore not be construed as being included within the term lottery as used in either the constitutional provision under consideration or in chapter 945 of the statutes. Therefore I conclude that the games allowed to be conducted by the Wisconsin state lottery do not include any of the betting/banking games, such as roulette, blackjack, craps, baccarat, Chemin de fer and similar casino gambling, and do not include any forms of gambling conducted by the playing of gambling machines such as slot machines, video gambling machines and similar machines and devices. *Page 28 
Contained in your first question is another issue which needs to be addressed, that being the types of games which the state lottery board may legally operate resulting from specific language in article IV, section 24 (6) of the Wisconsin Constitution. That provision states that "[a]ny advertising of the state lottery shall indicate the odds of a specific lottery ticket to be selected as thewinning ticket for each prize amount offered." (Emphasis added.) This effect must be analyzed, because it should be determined whether the specific constitutional language has the effect of further limiting the types of games which the state lottery may legally conduct. It appears to me that the very specific language contained in the constitutional provision, quoted above, does limit the types of games which the state lottery can legally conduct to those games utilizing "tickets" in the conduct of the game. The "ticket" requirement again distinguishes the state operated lottery from other types, forms and methods of gambling.
The word "ticket" has been defined as follows: "In contracts, a slip of paper containing a certificate that the person to whom it is issued, or the holder, is entitled to some right or privilege therein mentioned or described; such, for example, are . . . lottery tickets, etc." Black's Law Dictionary 1328 (5th ed. 1979).
From the constitutional language and the definition of the word "ticket," I conclude that a game conducted by the state lottery must utilize some form of "ticket" setting forth the rights or privileges of participation in that lottery game in order to not run afoul of the constitutional language.
Finally, in answering your first question, I wish to emphasize that the forms of gambling encompassed by the definition of bet and gambling machines are prohibited by statute only, and do not come within the purview of prohibited lotteries as described in the constitution of this state. Therefore, the Legislature may allow casino-type gambling in the State of Wisconsin. Should it wish to do so, it need only enact appropriate repeals, or modifications to chapter 945 and 565 to legalize for all citizens in this state the *Page 29 
various forms of casino gambling including betting/banking games and the playing of gambling machines.
The conclusion which I reach concerning your second question is required by my opinion and conclusion regarding your first question. Neither the United States Supreme Court's decision inCalifornia v. Cabazon Band of Mission Indians, 480 U.S. 202
(1987), nor the provisions of the Indian Gaming Regulatory Act,25 U.S.C.A. §§ 2701-2721 (West Supp. 1989), effective October 17, 1988, authorize Indian gaming activities within Indian country[10] which take the form of betting/banking gambling or the operation of gambling machines contrary to the criminal prohibitions contained in chapter 945 of the statutes for the following reasons.
In the Cabazon decision, the United States Supreme Court fashioned and set forth criteria which must be utilized to ascertain whether state law can effectively prohibit gambling activities within Indian country.
The Court determined that the gambling laws and policy of the state in regard to the questioned activity must be analyzed to determine whether or not those laws are in fact criminal-prohibitory, that is, whether in general all persons are prohibited from engaging in those activities or whether the activity in *Page 30 
question has been, through changes in the state's public policy, converted from criminal-prohibitory to civil-regulatory, allowed but regulated activities. If the law of the state concerning an activity under inquiry totally prohibits any person from engaging in that specific activity, then that activity does violate the state's public policy regarding that activity. The statute is therefore prohibitory and the activity is prohibited from being conducted within the state and within Indian country. If, however, the state law in regard to the activity under inquiry allows the activity with regulations or restrictions then, even though violation of the restrictions may result in criminal sanctions, the law and policy is therefore classified as civil-regulatory in nature. The activity can therefore be conducted within Indian country free from state regulation and restrictions.
Applying these principles to the public policy concerning gambling in the State of Wisconsin, it appears that the policy toward lotteries has indeed, at least in regard to bingo, raffles, the state lottery and pari-mutuel on-track betting, become civil-regulatory in nature. It is no longer criminal-prohibitory and therefore such activities can be conducted within Indian country free from any regulation by the state.
However, through similar reasoning, the public policy in the State of Wisconsin concerning all forms of betting, the operation of gambling machines, and other forms of gambling not contained within the meaning of the term lottery, remains criminal-prohibitory in nature, not civil-regulatory. Banking games, such as roulette, blackjack, craps, baccarat, Chemin de fer and similar casino gambling and use of gambling machines and devices such as slot machines, video gambling machines, and similar machines are absolutely prohibited to all persons in the State of Wisconsin. Therefore, under the Cabazon analysis, these other forms of gambling may not be conducted anywhere in the State of Wisconsin including within Indian country.
The Indian Gaming Regulatory Act, 25 U.S.C.A. § 2710 (d)(1) (West Supp. 1989), allows Class III gaming activities to be *Page 31 
lawfully conducted within Indian country only if such activities are: "(B) located in a State that permits such gaming for any purpose by any person, organization, or entity,. . . ."
Class I gaming activities as described in the Indian Gaming Regulatory Act are traditional games conducted by the Indian tribes. Class II are games of chance commonly known as bingo and certain card games. Class III are all forms of gaming which are not Class I or Class II.
Therefore, it is clear that Class III gaming activities encompass at least all those forms of gambling, which I discussed in my opinion on your first question, i.e., the betting/banking games and the operation and playing of gambling machines, which are criminally prohibited by chapter 945 of the statutes. Therefore,ipso facto, those gambling activities are not "located in a State that permits such gaming for any purpose by any person, organization, or entity."
It is my opinion, therefore, that the Indian Gaming Regulatory Act does not authorize the operation of casino-type gambling activities within Indian country. This same result is required under the United States Supreme Court decision in Cabazon.
I am not unsympathetic to the importance of gaming activities within Indian country in providing jobs and economic development initiatives to Indians and non-Indians in the communities involved, and the importance of the revenues from such activities for tribal government functions, including their use for the health and general welfare of the Indian community. However, it is not my responsibility to establish the public policy on gambling in Wisconsin. My responsibility is to interpret and enforce the policy enacted by the Legislature. That policy as it relates to gambling is within the role, responsibility and ability of the Legislature to address as it did in enacting chapters 945 and 565.
The forms of gambling held illegal both within and without Indian country by this opinion are prohibited by statute only. These include video games of chance, slot machines, blackjack, *Page 32 
poker, roulette, craps and so-called bingo-derivative games such as bingo-let, bingo-jack, etc. Therefore, should it chose to do so, the Legislature may authorize casino-type gambling in the State of Wisconsin and, therefore, within Indian country, or just within Indian country. Should it wish to do so, the Legislature need only enact appropriate repeals or modifications to chapters 945 and 565.
DJH:JCM
[1] The Convention of 1846, Collections, Volume XXVII Constitutional Series, Vol. II, Publications of the State Historical Society of Wisconsin (1919), does report the following entry in the Constitutional Convention meeting of October 19, 1846: "Mr. Fuller introduced the following resolution, which was read, to wit: `Resolved, that the committee on miscellaneous provisions be instructed to inquire into the expediency of providing in the constitution an article forbidding the existence of anylottery, or the vending of any lottery tickets within this state, and also that they be instructed to inquire into the propriety of adopting an article in the constitution prohibiting [any] license from being granted for the sale of spirituous liquor, or for the exhibition of any jugglers, mountebanks, or wire dancers in this state.'" (Emphasis added.)
[2] The pertinent 1821 New York constitutional provision on lotteries provided: "No lottery shall hereafter be authorized in this state; and the legislature shall pass laws to prevent the sale of all lottery tickets within this state except in lotteries already provided for by law."
[3] Farnsley, Gambling and the Law: The Wisconsin Experience 1848-1980, 1980 Wis. L. Rev. 811.
[4] Secs. 1817, 4536, Stats. (1878) and 4598a, Stats. (1889).
[5] Sec. 1779, Stats. (1878).
[6] Sec. 1463, Stats. (1889).
[7] Sec. 172.29 (1), Stats. (1913).
[8] Sec. 176.90, Stats. (1945).
[9] Farnsley, Gambling and the Law: The Wisconsin Experience 1848-1980, 1980 Wis. L. Rev. 811.
[10] The term "Indian country" is defined in 18 U.S.C.A. § 1151 (West 1984). It means "(a) all land within the limits of any Indian reservation under the jurisdiction of the United States government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same." This definition applies whether the question involves criminal or civil jurisdiction. DeCoteau v.District County Court For Tenth Jud. Dist., 420 U.S. 425, 427 n. 2 (1975). The terms "reservation" and "Indian country" are used interchangeably herein. Any land held in trust for an Indian tribe may qualify as a "reservation." See 71 Op. Att'y Gen. 82 (1982). *Page 33