Scott RYCHNOVSKY, Chief of Police, Plaintiff-Respondent,

v.

VILLAGE OF FALL RIVER, a municipal corporation, by Dale Stanke, President, Fall River Village Board, Defendant-Appellant.

Court of Appeals

*No. 88–1011. Submitted on briefs August 11, 1988.—Decided September 1, 1988.*

(Also reported in 431 N.W.2d 681.)

For the defendant-appellant the cause was submitted on the briefs of *Julia J. Groeschel* and *Callahan and Arnold,* of Columbus.

For the plaintiff-respondent the cause was submitted on the brief of *Kenneth J. Quincey* and *Woodworth, Quincey, Becker & Schuessler,* of Beaver Dam.

Before Gartzke, P.J., Dykman and Sundby, JJ.

DYKMAN, J.   The Village of Fall River appeals from a judgment enjoining it from failing to comply

with sec. 61.65(1)(am), Stats.,[1] in disciplining police chief Scott Rychnovsky and awarding Rychnovsky his attorney fees. The issues are: (1) whether sec. 61.65(1)(am) applies to villages with populations under 5,000; (2) whether it applies to a police chief who has a valid and enforceable contract of employment with no provision for fair review; and (3) whether the trial court erred in ordering the Village to pay Rychnovsky's attorney fees. We conclude the statute applies but that the trial court had no authority to order the Village to pay all of Rychnovsky's attorney fees. We therefore affirm in part and reverse in part.

Rychnovsky is the chief of police for the Village of Fall River. He has a valid employment contract with the Village. The Village Board informed Rychnovsky in February 1988 that he would be suspended for one week for failing to perform his duties. Rychnovsky sought an injunction to prevent the Village from suspending him without complying with sec. 61.65(1)(am), Stats. The court granted the request. It also awarded Rychnovsky his attorney fees.

---

[1]Section 61.65(1)(am), Stats., provides:

> If a village establishes a police department and does not create a board of police commissioners singly or in combination with another municipality, the village may not suspend, reduce, suspend and reduce, or remove any police chief or other law enforcement officer who is not probationary, and for whom there is no valid and enforceable contract of employment or collective bargaining agreement which provides for a fair review prior to that suspension, reduction, suspension and reduction or removal, unless the village does one of the following:
>
> . . . .

The Village does not argue that it complied with any of the exceptions under this section.

Section 61.65(1)(am), Stats., was amended effective August 1, 1987.[2] Prior to this amendment, this section provided:

> If a village establishes a police department *under par. (a) 1 or 3* and does not create a board of police commissioners singly or in combination with another municipality, the village may not suspend, reduce, suspend and reduce, or remove any police chief or other law enforcement officer who is not probationary unless the village follows the procedure under s. 62.13(5). To act under this paragraph in place of the board of police and fire commissioners under s. 62.13, the village may do either of the following: (emphasis added).
>
> . . ..

The "par. (a) 1 or 3," referred to above, requires each village with a population of 5,000 or more to provide police protection services by one of three methods. Sec. 61.65(1)(a). The trial court concluded that sec. 61.65(1)(am), as amended, applied to the Village. The Village contends that sec. 61.65(1)(am), as amended in 1987 to delete the underlined language, only applies to villages with populations of 5,000 or more.[3]

Statutory construction is a question of law. *State v. Denter,* 121 Wis. 2d 118, 122, 357 N.W.2d 555, 557 (1984). The purpose of statutory construction is to ascertain and give effect to the legislature's intent. *Id.* The primary source of construction is the statute's language. If the language's meaning is clear and

---

[2] It is undisputed that the amended version applies in this case.

[3] The 1987–88 Wisconsin Blue Book estimates the Village of Fall River's 1986 population at 898.

unambiguous on its face, resort to extrinsic aids is improper. *Id.* at 123, 357 N.W.2d at 557. If a statute is ambiguous, we examine the scope, history, context, subject matter and object of the statute to discern legislative intent. *Marriage of Schinner v. Schinner,* 143 Wis. 2d 81, 89, 420 N.W.2d 381, 384 (Ct. App. 1988). A statute is ambiguous if it is capable of being understood differently by reasonably well-informed persons. *Denter,* 121 Wis. 2d at 123, 357 N.W.2d at 557.

The Village contends that sec. 61.65(1)(am), Stats., only applies to villages with populations of 5,000 or more because sec. 61.65 contains nine references to villages with populations of at least 5,000 or 5,500, and no references to villages with populations under 5,000, and because sec. 61.65(1)(a) begins, "[e]ach village with a population of 5,000 or more shall provide police protection services by one of the following methods ...." Rychnovsky argues that by deleting the reference in sec. 61.65(1)(am) to police departments under sec. 61.65(1)(a) 1 or 3, the legislature intended to make sec. 61.65(1)(am) applicable to all villages. We conclude that each party's reading of the statute is reasonable, and that the statute is therefore ambiguous. We turn to the legislative history behind the amendment.

Section 61.65(1)(am), Stats., was created by sec. 2, 1985 Wis. Act 166. It was amended by the 1987–88 budget bill. Secs. 1210, 1211, 1987 Wis. Act 27. The amendment was included in the original budget bill introduced at the request of the governor. Secs. 1210, 1211, 1987 Senate Bill 100. The Legislative Fiscal Bureau prepared a "Summary of Governor's Budget Recommendations Relating to General Operations Senate Bill 100" (Summary) explaining the provisions

of the governor's bill. The Summary lists six changes to sec. 61.65(1)(am), one of which is to "clarify that these requirements [regarding due process procedures in disciplinary actions involving law enforcement officers in villages without a board of police commissioners] are to apply to all villages, not just those over 5,000 population." Summary, pp. 368–69. The provision was enacted without change from the governor's bill. We conclude that the legislative history establishes that sec. 61.65(1)(am), as amended by 1987 Wis. Act 27, applies to all villages, including Fall River, and not only to those with populations of 5,000 or more.

The Village argues that sec. 61.65(1)(am), Stats., does not apply to Rychnovsky because he had a valid and enforceable employment contract with the Village.[4] The Village reads the statute to apply to an officer only if either he or she has no valid and enforceable contract of employment *or* no collective bargaining agreement which provides for a fair review prior to suspension, reduction, etc. It argues that the language "which provides for a fair review" only qualifies collective bargaining agreement, not individual employment contracts. The general rule is that qualifying or limiting words or clauses refer to the next preceding antecedent. *Jorgenson and another v. City of Superior,* 111 Wis. 561, 566, 87 N.W. 565, 567 (1901), *overruled on other grounds, Dahlman v. Milwaukee,* 131 Wis. 427, 436, 110 N.W. 479, 482 (1907). However, this rule does not apply if the context or evident meaning of the enactment requires a different

---

[4]It is undisputed that the Village has established a police department, has not established a board of police commissioners and Rychnovsky is not on probation.

construction. *Jorgenson,* 111 Wis. at 566, 87 N.W. at 567.

We conclude that the context and evident meaning of sec. 61.65(1)(am), Stats., require that the phrase "which provides for a fair review" refers both to collective bargaining agreements and valid and enforceable contracts of employment. The purpose of sec. 61.65(1)(am) is to require due process procedures in disciplinary actions involving law enforcement officers in towns or villages without boards of police commissioners. *See* Summary, p. 368. Those due process protections would be redundant if the officer already had such protections in an employment contract or collective bargaining agreement. Thus, the statute specifically excludes officers who already have such protections.

The Village contends that employees such as Rychnovsky can negotiate satisfactory contracts which protect their employment and therefore do not need the statute's protection. Assuming this is true, it would not explain why the legislature would choose to protect officers with collective bargaining agreements which do not contain fair review procedures. Certainly a union has as much leverage to negotiate a collective bargaining agreement containing fair review procedures as an officer has to negotiate an individual contract containing such procedures. We are not persuaded that the legislature intended to protect officers with collective bargaining agreements which do not contain fair review procedures, but not to protect officers with individual contracts which do not

contain such procedures. We conclude the statute applies to Rychnovsky.[5]

The Village argues that the trial court erred in ordering it to pay Rychnovsky's attorney fees. The trial court relied on sec. 895.35, Stats., for its award. However, the supreme court has construed this statute to allow a municipality or county to pay an officer's attorney fees if it so elects. *Bablitch & Bablitch v. Lincoln County,* 82 Wis. 2d 574, 583–84, 263 N.W.2d 218, 223–24 (1978). If the municipality refuses payment, the officer has no cause of action against it under sec. 895.35. *Id.* at 584, 263 N.W.2d at 224.

Rychnovsky does not take issue with this position but contends that the trial court had discretion to require reimbursement of his costs in the interest of justice. We disagree. Attorney fees are not recoverable in Wisconsin absent a statute or enforceable contract providing therefor. Each party bears its own costs of litigation. *Kremers-Urban Co. v. American Employers Ins.,* 119 Wis. 2d 722, 744, 351 N.W.2d 156, 167–68 (1984). The only applicable statute is sec. 814.04(1)(b), Stats., which limits an award of attorney fees to $100. We reverse the attorney fees award and remand for the court to award attorney fees under this section.

Rychnovsky requests costs and fees under sec. (Rule) 809.25(3), Stats., which governs frivolous appeals, for both the trial and appeal. We deny the request. Rychnovsky did not request costs and fees under sec. 814.025, Stats., in the trial court. We have

---

[5]The village raises a third issue in its reply brief. We do not consider issues raised for the first time in reply briefs. *In Matter of Estate of Bilsie,* 100 Wis. 2d 342, 346 n. 2, 302 N.W.2d 508, 512 (Ct. App. 1981).

authority to grant costs and fees only for a frivolous appeal, not for a frivolous defense raised in the trial court. As to the appeal costs and fees, Rychnovsky did not prevail on one issue. The Village's argument on the issue on which Rychnovsky did prevail was not without any reasonable basis in law or equity. Sec. (Rule) 809.25(3)(c)2.

*By the Court.*—Judgment affirmed in part, reversed in part and remanded for assessment of attorney fees under sec. 814.04(1)(b), Stats. No appeal costs to either party.