IN RE the PATERNITY OF C.A.S. and C.D.S.:
W.W.W., Petitioner-Appellant,†

v.

M.C.S., Respondent-Third Party-Petitioner-
Respondent,

R.J.S., Third Party-Respondent-Respondent.

Court of Appeals

*No. 89-0265. Submitted on briefs October 12, 1989.—Decided
April 26, 1990.*

(Also reported in 456 N.W.2d 899.)

†Petition to review granted.

447

For the petitioner-appellant the cause was submitted on the briefs of *David E. Lasker* of *Julian, Olson & Lasker, S.C.* of Madison.

For the respondent-third party-petitioner–respondent the cause was submitted on the brief of *Richard J. Podell* of *Richard J. Podell & Associates, S.C.* of Milwaukee.

For C.A.S and C.D.S. the cause was submitted on the briefs of *Patience D. Roggensack* of *Ross & Stevens, S.C.,* guardian ad litem for C.A.S. and C.D.S., of Madison.

Before Gartzke, P.J., Dykman and Sundby, J.J.

DYKMAN, J. W. appeals from an order dismissing his petition that he be adjudicated the father of two children. He asserts that he has statutory and constitutional rights to obtain blood tests to establish his paternity. He also argues that it is in the best interests of the children that a paternity determination be made.

We conclude that W.'s asserted rights do not exist or have been waived. The trial court's findings involving the best interests of the children are not clearly erroneous. Its conclusion as to where the children's interests lie is correct. We therefore affirm.

R. and M. were married in 1967. M. gave birth to five children during this marriage, two of whom, born in 1982 and 1984, are involved in this litigation. In May 1985, W. began this paternity action, seeking to be adjudicated the father of the two children. At an evidentiary hearing, M. admitted having intercourse with W. when one of the children was conceived. She also admitted that she had wanted to believe that one of the children was W.'s child, and she testified that she took steps to

make conception more likely. W. testified that he had intercourse with M. when both of the children were conceived. He added that M. told him that one of the children was his child. M. and R. testified that, despite M.'s affair with W., their marriage was secure and that they furnished an economically and emotionally supportive home for all five children.

In June 1986, the trial court concluded that secs. 767.46(4) and 767.48(1), Stats.,[1] required that blood tests be performed on W. and the children and issued an order to that effect. We granted petitions for leave to appeal and, in June 1987, affirmed the trial court. *In re Paternity of C.A.S. and C.D.S.,* No. 86-1207 unpublished slip op. (Wis. Ct. App. June 25, 1987). Shortly thereafter, and effective August 1, 1987, the legislature enacted sec. 767.458(1m). *See* sec. 2137d, 1987 Wis. Act 27, creating sec. 767.458(1m). That statute provides:

> In an action to establish the paternity of a child who was born to a woman while she was married, where a man other than the woman's husband alleges that he, not the husband, is the child's father, a party may

---

[1]Section 767.46(4), Stats., provides:

If a party or the guardian ad litem refuses to accept a recommendation made under this section and blood tests have not yet been taken, the court shall require the appropriate parties to submit to blood tests. After the blood tests have been taken the judge or family court commissioner shall make an appropriate final recommendation.

Section 767.48(1), Stats., provides in part:

(a) The court or family court commissioner may, and upon request of a party shall, require the child, mother, any male for whom there is probable cause to believe that he had sexual intercourse with the mother during a possible time of the child's conception, or any male witness who testifies or will testify about his sexual relations with the mother at a possible time of conception to submit to blood tests.

allege that a judicial determination that a man other than the husband is the father is not in the best interest of the child. If the judge or court commissioner determines that a judicial determination of whether a man other than the husband is the father is not in the best interest of the child, no blood tests may be ordered and the action shall be dismissed.

R., M., and the two children requested that we reconsider our opinion in light of the enactment of sec. 767.458(1m), Stats. We declined to do so. The supreme court denied their petitions for review, and the case was remanded to the trial court.

After an evidentiary hearing, the trial court concluded that sec. 767.458(1m), Stats., applied to this action and found that the children were experiencing healthy and happy lives and had good relationships with R. and M. and their siblings. The court also found:

Based on all the testimony including the testimony of two psychologists, there is a high probability that a judicial determination finding a man other than third party respondent, [R.], to be the father of the minor children [ ] is not in the best interest of the children and that it is more likely than not to cause damage and possibly irreparable harm to them.

The court dismissed W.'s petition.

## I.

Notwithstanding sec. 767.458(1m), Stats., W. argues that he has a constitutional right to establish his parentage.[2] He relies upon *Slawek v. Stroh,* 62 Wis. 2d 295,

[2]The record does not disclose that W. notified the attorney general of his constitutional challenge to sec. 767.458(1m), Stats. A party is foreclosed from challenging the constitutionality of a statute unless the attorney general is given an opportunity to

304, 215 N.W.2d 9, 15 (1974), which states:

> [W]e conclude that the plaintiff-appellant, as a putative father of an illegitimate child, does have the constitutional right to establish, if he can, his natural parentage, to assert parental rights, and a legal forum with due process procedures to establish these rights.

*Slawek* relied on *Stanley v. Illinois,* 405 U.S. 645 (1972), and *State ex rel. Lewis v. Lutheran Social Services,* 59 Wis. 2d 1, 207 N.W.2d 826 (1973), as authority for its conclusion. Both those cases are based solely on the rights given to putative fathers by the equal protection and due process clauses of the fourteenth amendment to the United States Constitution. *Stanley,* however, was distinguished by the Supreme Court in *Michael H. v. Gerald D.,* 109 S. Ct. 2333 (1989). We consider later United States Supreme Court opinions when determining whether a Wisconsin Supreme Court case interpreting federal law is still an accurate statement as to the federal question at issue. *State v. Thompson,* 142 Wis. 2d 821, 831, 419 N.W.2d 564, 567 (Ct. App. 1987).

In *Michael H.,* a biological father[3] asserted federal procedural and substantive due process rights to obtain

---

appear and defend the law. *St. ex rel. Smith v. Oak Creek,* 131 Wis. 2d 451, 457, 389 N.W.2d 366, 368 (Ct. App. 1986), *aff'd,* 139 Wis. 2d 788, 407 N.W.2d 901 (1987). However, W.'s claim is that *Slawek v. Stroh,* 62 Wis. 2d 295, 304, 215 N.W.2d 9, 15 (1974), gives him a constitutional right to a blood test. Though W.'s argument could be interpreted as an assertion that sec. 767.458(1m) is unconstitutional, it could also be interpreted as an assertion that sec. 767.458(1m) does not apply to him. We give W. the benefit of the doubt and address his argument.

[3]Carole D. and Gerald D. were married when Michael H. had intercourse with Carole. After Carole gave birth to Victoria, blood

parental prerogatives to a child born to a woman married to another. Michael H. had lived with the child and her mother for eight months, and he had visitation rights for another seven months when the three were no longer living together. He claimed a procedural due process right to an evidentiary hearing to demonstrate his paternity before his liberty interest in his relationship with his daughter could be terminated. He also argued that he had a substantive due process right to a continued relationship with the child.

Five justices rejected the procedural due process claim, holding that Michael had no constitutional right to be declared the child's natural father. *Michael H.*, 109 S. Ct. at 2340-2341, 2343-44 (Scalia, J., plurality opinion); *id.* at 2347 (Stevens, J., concurring in the judgment).

The plurality opinion rejected the substantive due process claim, holding that a natural father has no constitutionally protected liberty interest in a relationship with his child when that child was born into "an extant marital family." *Id.* at 2341-46 (Scalia, J., plurality opinion). According to Justice Scalia, no liberty interest exists because "our traditions have protected the marital family . . . against the sort of claim Michael asserts." *Id.* at 2342 (Scalia, J., plurality opinion).

In his concurrence, Justice Stevens rejected Justice Scalia's analysis, stating that he "would not foreclose the possibility that a constitutionally protected relationship between a natural father and his child might exist in a case like this." *Id.* at 2347 (Stevens, J., concurring in the judgment). In his opinion, there could exist a constitutional right to an opportunity to convince a trial judge

---

tests of Carole, Michael and Victoria showed a 98.07% probability that Michael was Victoria's father. We use the term "biological father" to describe Michael H.

that the child's best interest would be served by granting the natural father visitation rights, depending on the strength of the relationship between the natural father and the child. He concurred in the judgment because he was satisfied that state law afforded Michael such an opportunity. *Id.*

The four dissenting justices agreed with Justice Stevens that a natural father who had developed a relationship with the child could have a constitutionally protected liberty interest in that relationship. *Id.* at 2349 (Brennan, J., dissenting); *id.* at 2360 (White, J., dissenting). The dissenters disagreed, however, that the state law adequately protected that interest here.

■ W. asserts that he has a federal due process right to blood tests to establish his paternity. Under *Michael H.,* we conclude that W. has no due process right to be adjudicated the natural father of M.'s two children and, therefore, has no right to compel blood tests. We recognize that blood tests were not at issue in *Michael H.;* however, five justices rejected Michael's claim that he had a due process right to be declared the child's natural father. Requesting blood tests to establish paternity amounts to a request to be declared a child's natural father.

■ W. also asserts that he has a federal due process right to a relationship with M.'s two children even though he has not established a relationship with either child. We also reject this claim. Four justices in *Michael H.* refused to recognize a constitutionally protected relationship between Michael and his daughter, even though he had a fifteen-month relationship with her. Here, W. had no relationship with the two children. Even the dissenting justices in *Michael H.* agreed that "a mere

biological connection is insufficient to establish a liberty interest on the part of an unwed father." 109 S. Ct. at 2352, n.2 (Brennan, J., dissenting); *id.* at 2361 (White, J., dissenting). We conclude that W. has no federal due process right, under the facts shown, to a relationship with M.'s two children.

W. asserts that the reason he was not able to establish a relationship with the children was that R. and M. have concealed them from him. Although W. was given an opportunity to prove his assertion, he did not do so. If anything, R. and M. showed and the trial court found that W.'s interest in the children was quite recent. Even were concealment shown, W.'s theory has been articulated by only two Supreme Court justices. *Michael H.,* 109 S. Ct. at 2361 (White, J., dissenting).

## II.

W. contends that he has a statutory right to a blood test, as we held in our 1987 opinion in this case, *In re Paternity of C.A.S. and C.D.S.,* No. 86–1207 unpublished slip op. (Wis. Ct. App. June 25, 1987). He also claims a statutory right to a relationship with the children, relying on sec. 767.45(1)(d), Stats.[4] Though he had such rights under our previous decision, he does not now. Section 767.458(1m) has taken them from him.

---

[4]Section 767.45(1), Stats., provides in part:

The following persons may bring an action or motion for the purpose of determining the paternity of a child or for the purpose of rebutting the presumption of paternity under s. 891.41:

(d) A man alleged or alleging himself to be the father of the child.

## III.

W. also asserts that the trial court erred by failing to follow our 1987 decision. We disagree. That decision did not consider sec. 767.458(1m), Stats., and was released before that statute became effective. The legislature is generally entitled to enact laws that alter the effect of judicial opinions. That occurred here.

R., M., and the two children brought sec. 767.458(1m), Stats., to the attention of the supreme court in their petition seeking review of the June 1987 decision. They brought the statute to our attention by requesting that we reconsider the decision.[5] W. infers from the denial of the petition for review and from our refusal to reconsider our June 1987 decision that both courts concluded that sec. 767.458(1m) had no effect on the June 1987 decision. That is an impermissible inference. A supreme court denial of a petition for review and our refusal to reconsider a decision carry no implication of approval or agreement. *Compare State v. Shillcutt,* 119 Wis. 2d 788, 806, 350 N.W.2d 686, 695 (1984) (denial of a request for certification carries no implication of approval or agreement).

## IV.

W. argues that the trial court erred by retroactively applying sec. 767.458(1m), Stats., to this case. This argu-

---

[5] A motion to reconsider a decision of the court of appeals is not permitted. Sec. 809.24, Stats. Parties, however, "may promptly file requests with the presiding judge regarding reconsideration of a decision." *Wis. Ct. App. IOP* VI. (6) (June 8, 1989).

ment has both statutory and constitutional underpinnings. There are rules to determine whether a statute has retroactive effect. *See Chappy v. LIRC,* 128 Wis. 2d 318, 323–24, 381 N.W.2d 552, 555–56 (Ct. App. 1985), *aff'd,* 136 Wis. 2d 172, 401 N.W.2d 568 (1987) (legislation other than remedial legislation presumed prospective unless express intent or necessary implication indicates otherwise). If a statute is retroactive, a constitutional question may arise. "Legislative intent as to retroactivity must be determined independent[ly] of the constitutionality of the action." *Wipperfurth v. U-Haul Co. of Western Wis., Inc.,* 101 Wis. 2d 586, 590, 304 N.W.2d 767, 769 (1981).

We have no doubt that the legislature intended a prospective application of sec. 767.458(1m), Stats. Sections 3203(10)(bm) and 3204(10)(am), 1987 Wis. Act 27, provided that the statute took effect on the first day of the third month beginning after publication and that the statute was made applicable only "at the first appearance" in a paternity action. Sec. 2137d, 1987 Wis. Act 27. However, the governor vetoed the parts of secs. 3203(10)(bm) and 3204(10)(am) pertaining to sec. 767.458(1m) and the words "at the first appearance," which had been the first four words of sec. 767.458(1m). In addition, the governor's veto message read:

> I am partially vetoing section 2137d to eliminate the distinction that the provision relates to the first appearance in a paternity case in order to allow the courts additional opportunity to make such a ruling. Further, my partial veto of sections 3203(10)(bm) and 3204(10)(am) provides that the courts may use this provision upon the effective date of this act.

> My veto is intended to allow the courts to use this provision to afford this protection to as many children as possible.

Governor Thompson's Veto Message for 1987 Wis. Act 27 (S.B. 100) at 68.

■ The governor's vetoes and veto message are unequivocal as to his intent that the statute be retroactive. Gubernatorial vetoes to 1987 Wis. Act 27 that greatly changed the substance of the legislation were sustained in *Wis. Senate v. Thompson,* 144 Wis. 2d 429, 424 N.W.2d 385 (1988). Gubernatorial actions affecting legislation were considered indicative of a statute's meaning in *Celon Co. v. Department of Taxation,* 269 Wis. 372, 376-77, 69 N.W.2d 453, 455-56 (1955); *Sommer v. Carr,* 99 Wis. 2d 789, 799, 299 N.W.2d 856, 860 (1981); *Milwaukee Co. v. Labor & Ind. Rev. Comm. ,* 113 Wis. 2d 199, 205, 335 N.W.2d 412, 416 (Ct. App. 1983); and *Rychnovsky v. Village of Fall River,* 146 Wis. 2d 417, 421-22, 431 N.W.2d 681, 683 (Ct. App. 1988). The governor has a role in the legislative process. *State ex rel. Sundby v. Adamany,* 71 Wis. 2d 118, 131, 237 N.W.2d 910, 916 (1976). We conclude that the intent of sec. 767.458(1m), Stats., is that it applies retroactively.

"Having found the intent of the statute to be retroactive, we must consider its constitutionality. The general rule is that 'A statute dealing with substantive rights cannot affect rights vested on its effective date.' " *State ex rel. Briggs & Stratton v. Noll,* 100 Wis. 2d 650, 655, 302 N.W.2d 487, 491 (1981) (quoting *Estate of Riley,* 6 Wis. 2d 29, 37, 94 N.W.2d 233, 237 (1959)). W.'s brief directly asserts the unconstitutionality of sec. 767.458(1m), Stats., as applied to him.

Once the legislature gave him a right to a blood test, W. argues, that right cannot be legislatively taken away because it is protected by the due process clause of the fourteenth amendment to the United States Constitution. This is an assertion that the retroactive application of sec. 767.458(1m), Stats., to W. renders that statute unconstitutional as to him. We do not reach this issue. Nothing of record shows that W. notified the attorney general of the asserted unconstitutionality of sec. 767.458(1m). W. is therefore foreclosed from challenging the statute's constitutionality. *St. ex rel. Smith v. Oak Creek,* 131 Wis. 2d 451, 457, 389 N.W.2d 366, 368 (Ct. App. 1986), *aff'd,* 139 Wis. 2d 788, 407 N.W.2d 901 (1987).

## V.

Notwithstanding the trial court's determination that it was not in the children's best interests that this action proceed, W. asserts that proceeding with this action *is* in the children's best interests. He asks this court to order that blood tests be conducted.

The basic problem with this assertion is that art. VII, sec. 5(3) of the Wisconsin Constitution precludes us from finding facts. *Wurtz v. Fleischman,* 97 Wis. 2d 100, 107, n.3, 293 N.W.2d 155, 159 (1980). A determination of what is in the best interests of the children is a mixed question of fact and law. *Adoption of Randolph,* 68 Wis. 2d 64, 69, 227 N.W.2d 634, 637 (1975). Thus, the trial court's findings of historical fact, including psychological factors, are sustained by appellate courts unless clearly erroneous. *Id.; Noll v. Dimiceli's, Inc.,* 115 Wis. 2d 641, 643, 340 N.W.2d 575, 577 (Ct. App. 1983). The ultimate

461

conclusion of where the best interests lie is a matter of law, which we review *de novo. Randolph,* 68 Wis. 2d at 69, 227 N.W.2d at 637. That conclusion, however, is nearly always inescapable once a trial court decides which of several competing facts to accept.

We may not consider W.'s factual assertions that the children will benefit from knowing their true parentage early on and that hiding the children's true parentage is psychologically and morally unsound. These factual assertions were made by an expert witness whose testimony the trial court rejected. The trial court, not the appellate court, determines what weight to attribute to expert testimony. *In Matter of Adoption of R.P.R.,* 98 Wis. 2d 613, 619, 297 N.W.2d 833, 836 (1980).

We review the record for evidence supporting the trial court's factual findings. *Town of Mt. Pleasant v. Werlein,* 119 Wis. 2d 90, 95, 349 N.W.2d 102, 105 (Ct. App. 1984). In addition to their own testimony, R. and M. presented evidence from two psychologists. The psychologists testified that the children would be harmed should they now discover that R. was not their father. That evidence supports the trial court's findings that the children would more likely than not be damaged and that there was a substantive risk of harm by a judicial determination that W. was their father. Those findings are not clearly erroneous. We next consider the trial court's conclusion regarding the children's best interests.

## VI.

W. argues that the trial court used the wrong legal standard in applying sec. 767.458(1m), Stats.[6] Section

---

[6]The court reasoned:

767.458(1m) requires the trial court to decide whether "a judicial determination of whether a man other than the husband is the father is not in the best interest of the child." The trial court found that there was a *high probability* that such a determination was not in the children's best interests. Even if the trial court erred by using the wrong standard, the error is harmless.

What is in the best interests of the children is a mixed question of law and fact. *Randolph,* 68 Wis. 2d at 69, 227 N.W.2d at 637. We have separated the trial court's factual findings from its conclusion of law. *Badger State Agri-Credit v. Lubahn,* 122 Wis. 2d 718, 723, 365 N.W.2d 616, 619 (Ct. App. 1985). We have concluded that those findings are not clearly erroneous.

We now review the trial court's conclusion of law regarding the best interests of the children. We review that conclusion independently, based on the facts that we have accepted as not clearly erroneous. *Janesville Community Day Care v. Spoden,* 126 Wis. 2d 231, 236-37, 376 N.W.2d 78, 81 (Ct. App. 1985). Our independent conclusion, based on those facts, is that a judicial determination of whether W. is the children's father is not in their best interests. Because we reach the same best interest conclusion as the trial court, any error the trial court made in using an incorrect standard was harmless.

---

Based on all the testimony including the testimony of two psychologists, *there is a high probability that* a judicial determination finding a man other than third party respondent, [R.], to be the father of the minor children, [ ] is not in the best interest of the children and that *it is more likely than not* to cause damage and *possibly* irreparable harm to them.

(Emphasis added.)

463

W. also argues that sec. 767.458(1m), Stats., requires the trial court to consider long-term as well as short-term interests of the children. That statute makes no such distinction, and W. offers no authority for this assertion. We see no error.

*By the Court.*—Order affirmed.